**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN ORTUZAR, Individually and on Behalf of All Others Similarly Situated,<br><br>                                  Plaintiff,<br><br>        v.<br><br>FRANCESCA'S HOLDINGS CORPORATION, GREG BRENNEMAN, RICHARD ZANNINO, NEILL P. DAVIS, THERESA R. BACKES, MARK VENDETTI, SEI JIN ALT and RANDI SONENSHEIN,<br><br>                                  Defendants. | No.  13-cv-06882-RJS |

(caption continued on subsequent page)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**THE INSTITUTIONAL INVESTORS FOR APPOINTMENT AS**
**LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL, AND**
**CONSOLIDATION OF ALL RELATED ACTIONS**

| | |
|---|---|
| WEST PALM BEACH POLICE PENSION FUND AND TAUNTON CONTRIBUTORY RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | No. 13-cv-07804-RJS |
| Plaintiff, | |
| v. | |
| FRANCESCA'S HOLDINGS CORPORATION, JOHN DE MERITT, NEILL P. DAVIS, GENE MORPHIS, KYONG GILL, MARK VENDETTI, GREG BRENNEMAN, PATRICIA A. BENDER, RICH EMMETT, JOSEPH SCHARFENBERGER, RICHARD KUNES, MARIE TOULANTIS, RICH ZANNINO, THERESA BACKES, KAL MALIK, CYNTHIA THOMASSEE, SEI JIN ALT, RANDI SONENSHEIN, GOLDMAN, SACHS & CO., J.P. MORGAN SECURITIES LLC, STIFEL, NICOLAUS & COMPANY, INCORPORATED, KEYBANC CAPITAL MARKETS INC., RBC CAPITAL MARKETS, LLC, and JEFFERIES & COMPANY, INC., | |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

SUMMARY OF THE PENDING ACTIONS ............................................................................ 3

ARGUMENT ............................................................................................................................ 7

      A.      The Institutional Investors Should Be Appointed Lead Plaintiff............................7

                1.      The Institutional Investors Have The Largest Financial Interest In The Relief Sought By The Class................................................................8

                2.      The Institutional Investors Satisfy The Requirements Of Rule 23 .............8

      B.      The Court Should Approve The Institutional Investors' Selection Of Lead Counsel .................................................................................................................11

      C.      The Related Actions Should Be Consolidated.......................................................13

CONCLUSION....................................................................................................................... 14

i

# TABLE OF AUTHORITIES

## *Cases*

*City of Brockton Ret. Sys. v. The Shaw Grp., Inc.*,
  No. 06 Civ. 8245(CM)(MHD), 2007 WL 2845125 (S.D.N.Y. Sept. 26, 2007) ....................... 10

*Glauser v. EVCI Colls. Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) ..................... 13

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) ..................... 8, 9, 12

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ..................... 2

*In re Kit Digital, Inc. Sec. Litig.*,
  No. 12 Civ. 4199 (VM), 2013 WL 1200324 (S.D.N.Y. Mar. 13, 2013) ................................. 11

*In re Maxwell Technologies, Inc.*,
  No. 3:13-cv-00580-BEN (S.D. Cal. Oct. 24, 2013)..................... 11

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ..................... 13

*Reimer v. Ambac Financial Group, Inc.*,
  2008 WL 2073931 (S.D.N.Y. May 9, 2008) ..................... 9

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*,
  No. 11 Civ. 5097(JFK), 2011 WL 4831209 (S.D.N.Y. Oct. 12, 2011)..................... 9

*Weltz v. Lee*,
  199 F.R.D. 129 (S.D.N.Y. 2001) ..................... 13

*Xianglin Shi v. Sina Corp.*,
  No. 05-cv-2154-NRB, 2005 WL 1561438 (S.D.N.Y. July 1, 2005) ..................... 9

## *Statutes, Rules and Regulations*

15 U.S.C. § 77..................... passim

15 U.S.C. § 78..................... passim

17 C.F.R. § 240.10b-5..................... 1

Fed. R. Civ. P. 23..................... passim

Fed. R. Civ. P. 42..................... 1, 14

The West Palm Beach Police Pension Fund ("WPB Police") and the Taunton Contributory Retirement System ("Taunton," and together with WPB Police, the "Institutional Investors") respectfully submit this memorandum in support of the Institutional Investors' motion (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), and Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), (2) for approval of their selection of Saxena White P.A. ("Saxena White") as Lead Counsel for the Class and the Law Offices of Curtis V. Trinko, LLP ("Trinko") as Liaison Counsel for the Class, and (3) for consolidation of all related securities class actions pursuant to Fed. R. Civ. P. 42(a).

## PRELIMINARY STATEMENT

Currently pending in this District are at least two securities class actions (the "Related Actions") brought on behalf of all persons who purchased the common stock of Francesca's Holdings Corporation ("Francesca's" or the "Company") between January 10, 2012 and September 3, 2013 (the "Class Period"), the longest Class Period alleged in the pending complaints. The Related Actions allege violations of Sections 10(b) and 20(a) of the Exchange Act as amended by the PSLRA (15 U.S.C. §§ 78(j)(b) and 78(t)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) against Francesca's and certain of its executive officers and directors, as well as Sections 11, 12(a)(2), and 15 (15 U.S.C. §§ 77k and 77o) of the Securities Act against Francesca's and certain of its executive officers, directors, and underwriters of the Company's allegedly false offering materials issued in connection with its Secondary Public Offerings.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant or group of movants has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movants have made a *prima facie* showing that they are typical and adequate class representatives under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).

The Institutional Investors are the "most adequate plaintiff" and should be appointed Lead Plaintiff. The Institutional Investors suffered approximately $350,746.24 in losses on a first-in-first-out ("FIFO") basis, and $337,592.24 in losses on a last-in-first-out ("LIFO") basis, in connection with their Class Period investments in Francesca's common stock. In addition, appointment of the Institutional Investors as Lead Plaintiff will protect the interests of all Class members as they may pursue claims under Section 11 of the Securities Act, in addition to claims under Section 10(b) of the Exchange Act. Specifically, WPB Police purchased Francesca's common stock directly pursuant to the Company's Secondary Offerings during the Class Period, and has suffered losses as a result—a substantial financial interest that will ensure their vigorous prosecution of investors' claims.[1] In addition to asserting the largest financial interest, the Institutional Investors readily satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure because their claims are typical of all members of the Class, and they will fairly and adequately represent the Class.

Moreover, the Institutional Investors, which collectively manage billions of dollars in assets, are the ideal Lead Plaintiffs contemplated by the PSLRA. *See In re eSpeed, Inc. Sec.*

---

[1] The Institutional Investors' PSLRA-required Certifications are provided as Exhibit B to the Declaration of Joseph E. White, III (the "White Decl."). In addition, charts setting forth calculations of the Institutional Investors' losses are provided as Exhibit C to the White Decl.

2

*Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("the PSLRA was designed to favor institutional investors"). Indeed, the Institutional Investors are a paradigmatic Lead Plaintiff under the PSLRA because its members have extensive experience serving as fiduciaries, and are sophisticated institutional investors with a real financial interest in the litigation, which provides the incentive and ability to supervise and monitor counsel. Further, the Institutional Investors fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake the responsibilities entailed in acting as Lead Plaintiff to guarantee vigorous prosecution of this action.

The Institutional Investors have also demonstrated their adequacy through their selection of Saxena White, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class, and have selected the Trinko Firm, a similarly experienced law firm, to serve as Liaison Counsel for the Class. Accordingly, based on the Institutional Investors' substantial financial interest and their demonstrated commitment and ability to jointly oversee this action in a cohesive manner, the Institutional Investors respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their motion.

## SUMMARY OF THE PENDING ACTIONS

Francesca's, a Delaware corporation headquartered in Texas, purports to be a "growing" specialty retailer with 429 retail locations in 44 states in the United States designed and merchandised to feel like independently-owned, upscale boutiques selling a mix of women's apparel, jewelry and accessories. The Company's Stock trades on the NASDAQ Global Stock Market under the symbol "FRAN."

As alleged in the pending actions, Francesca's failed to disclose material adverse facts about the Company's financial well-being and future prospects in Francesca's SPO Documents

3

and throughout the Class Period. Specifically, Francesca's touted its financial success and growth prospects, stressing that the Company's profit margins were due in part to the Company's commitment to constantly bring new merchandise to its stores. This in turn purportedly inspired repeat visits by its customers, thereby helping to increase store sales and outperform competitors. These misrepresentations, omissions and related representations concerning the Company's financial condition, operations, and future prospects, caused the Company's stock price to be artificially inflated throughout the Class Period.

On July 21, 2011, Francesca's completed its initial public offering ("IPO") of 11.5 million shares of common stock, of which only 2.9 million shares (2,941,176 shares) were sold by the Company, while approximately 8.6 million shares were sold by the selling stockholders (including 616,109 shares sold by members of the Company's management). Subsequent to the IPO, the Company completed three secondary offerings on or about January 26, 2012, April 17, 2012 and March 27, 2013, respectively, (collectively, the "SPOs"), where certain stockholders (including members of the Company's management) sold approximately 12.0 million, 9.0 million and 7.4 million shares of the Company's common stock, respectively. The most recent offering, in March 2013, allowed certain selling stockholders (CCMP Capital Advisors)[2] to completely exit their position in the Company. The offering materials issued in connection with the SPOs were materially false and misleading when issued.

---

[2] CCMP Capital Advisors, LLC ("CCMP") is a private equity firm specializing in buyouts and growth equity investments in companies ranging from $500 million to more than $3 billion in size. CCMP acquired a controlling interest in Francesca's on March 1, 2010. CCMP, which is headquartered in New York City, owned approximately 7.3 million shares of the Company's common stock, or 16.4%, of its then outstanding capital, all of which was sold in the March 2013 SPO, which also was conducted by Jefferies.

Although the Company touted its financial success, investors and analysts often questioned Francesca's profit margins and product purchasing practices. In particular, on April 21, 2012, the financial newspaper *Barron's* published a feature article entitled "No Margin for Error."[3] The article noted the Company's market-leading profit margins among specialty retailers, yet questioned whether the Company was getting "sweet deals from insiders who are also suppliers." Specifically, the article stated that the Company's outsized profit margins were unusual in the industry, since specialty retailers typically have gross margins of 42% to 44%, and operating margins of roughly 10%, while Francesca's margins were much higher at 52% and 21%, respectively.

Additionally, a March 27, 2013 article by *Barron's* entitled "Time to Say Ciao to Francesca's" expressed skepticism in "Francesca's ability to outperform, given its rapid expansion and cozy relationship with suppliers", and recognized the difficulty "Francesca's may have in maintaining its sky-high margins."[4] An August 28, 2013 *Seeking Alpha* article entitled "Francesca's: Investors In For Nasty Surprise Next Week" also scrutinized the Company's ability to "maintain huge margins and spectacular growth."[5]

The truth concerning Francesca's financial condition and business operations was revealed on September 4, 2013, when prior to the opening of the stock market, Francesca's released its fiscal second quarter earnings results whereby the Company announced that it missed earnings estimates, and also lowered its full-year profit forecast. The Company announced that

---

[3] Jacqueline Doherty, *No Margin for Error*, BARRON'S, (Apr. 21, 2012) *available at* http://online.barrons.com/article/SB50001424053111903835404577348202146910304.html

[4] Teresa Rivas, *Time to Say Ciao to Francesca's?*, BARRON'S, (March 27, 2013) *available at* http://online.barrons.com/article/SB50001424052748704882404578386354287020548.html

[5] Richard Pearson, *Francesca's: Investors In For Nasty Surprise Next Week*, SEEKING ALPHA, (Aug. 28, 2013) *available at* http://seekingalpha.com/article/1661052-francescas-investors-in-for-nasty-surprise-next-week?source=yahoo

same store sales at existing locations fell 1 percent in the quarter, compared to a 21 percent increase a year earlier.  Francesca's blamed the lack of a dominant apparel fashion trend in the quarter and lower levels of customer traffic.  Tellingly, Company insiders cashed out only months prior to disclosing Francesca's true financial condition.

In response to the disclosures of an earnings miss, deteriorating margins and lower full-year guidance, Francesca's share price plummeted almost 26% ($6.23 per share) from $24.02 per share on September 3, 2013 to $17.79 per share on September 4, 2013, wiping out $275 million in the Company's market capitalization in one-day.

In the wake of the public disclosures concerning Francesca's true financial condition and business operations, investors filed securities class actions asserting claims for violations of the Exchange Act and Securities Act against Defendants.  The first such action, *Ortuzar v. Francesca's Holdings Corp.,* No. 13-cv-06882-RJS, was filed in this District on September 27, 2013, which asserted Exchange Act claims on behalf of purchasers in Francesca's common stock from March 20, 2013 through September 3, 2013.   That same day, a notice of the pendency of that action was published alerting public investors that the deadline to seek Lead Plaintiff status fell on November 26, 2013.  *See* White Decl., Ex. A.  A subsequent action was brought by the Institutional Investors, *WPB Police Pension Fund and Taunton Contributory Retirement System v. Francesca's Holdings Corp.,* No. 13-cv- 07804-RJS, which was filed against Francesca's on November 4, 2013, asserting additional claims under the Securities Act arising out of the alleged misrepresentations in the SPOs, and asserting a class period of January 10, 2012 through September 3, 2013.  A notice published that same day informed investors of the expanded class period, and referred Class members to the November 26, 2013 deadline for filing a motion

seeking Lead Plaintiff appointment.[6]  Thus, the longest period encompassed by the complaints on file in this action extends from January 10, 2012 through September 3, 2013.[7]

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. §§ 77z-1(a)(3)(A), 78u-4(a)(3)(A).  The Institutional Investors' motion is therefore timely as it was filed within 60 days of the publication of the notice filed on September 27, 2013.  *See* 15 U.S.C. §§ 77z-1(a)(3)(A)(i)(II), 78u-4(a)(3)(A)(i)(II).

## ARGUMENT

### A.    The Institutional Investors Should Be Appointed Lead Plaintiff

The Institutional Investors respectfully submit that they should be appointed Lead Plaintiff because they are the movants "most capable of adequately representing the interests of class members."  15 U.S.C. §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B).  The PSLRA sets forth the procedure for selecting the Lead Plaintiff in class actions arising under the federal securities laws, and provides a presumption in favor of the "person or group of persons" which has the "largest financial interest" in the relief sought by the Class and satisfies the relevant requirements of Fed. R. Civ. P. 23.  *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).  As set forth below, the Institutional Investors believe they are the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

---

[6] A copy of WPB Police and Taunton's notice expanding the class period is attached as Exhibit D to the White Decl.

[7] For purposes of determining a Lead Plaintiff movant's financial interest under PSLRA, the longest filed and publicly-noticed period applies.  *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) ("For the purposes of this analysis, we use the longer class period with the earlier start date").

1.     **The Institutional Investors Have The Largest Financial Interest In The Relief Sought By The Class**

The Institutional Investors should be appointed Lead Plaintiff because they have the largest financial interest in the relief sought by the Class.  *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii).   As set forth herein, the Institutional Investors purchased a significant amount of shares on a gross and net basis during the Class Period, and sustained total losses of approximately $350,746.24 on a FIFO basis, or $337,592.24 in losses on a LIFO basis, from their Class Period transactions in Francesca's common stock.  *See* White Decl., Exs. B and C. To the best of the Institutional Investors' knowledge, there are no other applicants who have sought, or are seeking, Lead Plaintiff appointment that have a larger financial interest arising from transactions in Francesca's common stock.  Accordingly, the Institutional Investors have the largest financial interest of any qualified movant seeking Lead Plaintiff status, and are the presumptive "most adequate plaintiff."  15 U.S.C. §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii).

2.     **The Institutional Investors Satisfy The Requirements Of Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, the Institutional Investors otherwise satisfy the adequacy and typicality requirements of Fed. R. Civ. P. 23.  *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(cc), 78u-4(a)(3)(B)(iii)(I)(cc); *see In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) ("a proposed lead plaintiff need only make a 'preliminary showing' that it will satisfy the typicality and adequacy requirements of Rule 23") (citations omitted).  Here, the Institutional Investors indisputably satisfy the typicality and adequacy requirements.

The Institutional Investors' claims are typical of the claims of other purchasers of Francesca's common stock during the Class Period.  Typicality can be established by showing that the proposed Class representative's "claims arise[] from the same course of events and they

make similar legal arguments to prove the defendants' liability as the other putative class members." *In re Bank of Am.*, 258 F.R.D. at 269 (typicality requirement satisfied when investors "allege[d] material misstatements and/or omissions made by defendants . . . and they share an interest in establishing defendants' liability and achieving the maximum amount of recovery") (internal quotations and citation omitted). Here, the Institutional Investors' and all other Class members' claims arise from the same course of events and legal arguments to prove that Defendants' liability is nearly identical concerning these investors. Indeed, like all other Class members, the Institutional Investors: (1) purchased Francesca's common stock during the Class Period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) were damaged thereby. *See Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, No. 11 Civ. 5097(JFK), 2011 WL 4831209, at *2 (S.D.N.Y. Oct. 12, 2011) (finding typicality requirement "easily met" when proposed Lead Plaintiff "asserted that it purchased [the company's] securities during the class period and was injured by false and misleading representations made by defendants"). As such, the Institutional Investors are typical Class representatives.

The Institutional Investors similarly satisfy the adequacy requirement of Rule 23. Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). In order for the Class's interests to be fairly and adequately represented, "(1) there should be no conflict between the proposed lead plaintiff and the members of the class, (2) the selected counsel should be qualified, experienced, and able to conduct the litigation, and (3) the lead plaintiff should have a sufficient interest in the outcome to insure vigorous advocacy." *Xianglin Shi v. Sina Corp.*, No. 05-cv-2154-NRB, 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005) (citation omitted). The

Institutional Investors satisfy these elements because their substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class' claims. The Institutional Investors' interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. Further, there are no facts to suggest any actual or potential conflict of interest or other antagonism between the Institutional Investors and the other Class members.

Further, the Institutional Investors are the very sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—a sophisticated group of institutional investors with a substantial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *see also Reimer v. Ambac Financial Group, Inc.*, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing group of three pension funds as Lead Plaintiff); *City of Brockton Ret. Sys. v. The Shaw Grp., Inc.*, No. 06 Civ. 8245(CM)(MHD), 2007 WL 2845125 (S.D.N.Y. Sept. 26, 2007) (appointing two public pension funds as Lead Plaintiff).

Finally, the Institutional Investors have demonstrated their adequacy through their selection of Saxena White as Lead Counsel, and their selection of the Trinko Firm as Liaison Counsel to represent the Class in this action. As discussed more fully below, Saxena White and the Trinko Firm are highly qualified and experienced in the area of securities class action litigation, and have repeatedly demonstrated their ability to jointly prosecute complex securities class action lawsuits effectively.

10

**B.**    <u>**The Court Should Approve The Institutional Investors' Selection Of Lead Counsel**</u>

The Court should approve the Institutional Investors' selection of Saxena White as Lead Counsel on behalf of the Class.  Pursuant to the PSLRA, a movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent, and the Court should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(aa), 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Kit Digital, Inc. Sec. Litig.*, No. 12 Civ. 4199 (VM), 2013 WL 1200324, at *7 (S.D.N.Y. Mar. 13, 2013) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention") (internal quotations and citations omitted).  Here, the Institutional Investors retained Saxena White as proposed Lead Counsel and the Trinko Firm as proposed Liaison Counsel to represent the Class.

As demonstrated by its firm resume,[8] Saxena White has extensive experience in successfully prosecuting complex litigation, and is lead or co-lead counsel in major securities class and derivative actions nationwide.  In terms of benefits conferred upon Saxena White's clients, the firm has achieved resounding successes on behalf of shareholders nationwide as Saxena White's efforts in investor-related litigations has resulted in significant monetary benefits and corporate governance reforms. *See*, *e.g.*, *In re Bank of America Corp. Securities Derivative, and ERISA Litigation*, 09-md-2058-PKC (S.D.N.Y.) ($62.5 million recovery on behalf of nominal defendant, and the adoption of significant corporate governance reforms); *Central Laborers' Pension Fund v. SIRVA, Inc.*, 04 C 7644 (N.D. Ill.) ($53.3 million recovery and the adoption of important corporate governance reforms); *City Pension Fund for Firefighters and*

---

[8] *See* Saxena White's Firm Biography, attached as Exhibit E to the White Decl.

*Police Officers in the City of Miami Beach v. Aracruz Celulose, S.A., et al.*, No. 1:08-cv-23317-JAL (S.D. Fla. July 17, 2013) ($37.5 million settlement for shareholders in a securities fraud action brought against Aracruz Celulose, S.A.); *In re Sadia S.A. Securities Litigation*, 08-cv-09528-SAS (S.D.N.Y.) ($27 million settlement for shareholders involved in a securities fraud action against Sadia, S.A.).

In addition, judges around the country have recognized that Saxena White has the experience and resources to successfully and efficiently prosecute complex class litigation as Lead and Co-Lead Counsel. For example, in *In re Goldman Sachs Group, Inc. Derivative Litig.*, Master File No. 10 Civ. 3614-PAC (S.D.N.Y.), Judge Crotty appointed Saxena White as sole Lead Counsel amongst numerous firms, and specifically noted that "Saxena White is well qualified to play its role as lead counsel. The pleadings that it filed in this matter, including the motion papers, are competent and professional." Recently, on October 24, 2013, in *In re Maxwell Technologies, Inc.* No. 3:13-cv-00580-BEN (S.D. Cal.), the Honorable Roger Benitez appointed Saxena White as lead plaintiff, and stated that "Saxena White has extensive experience litigating securities class actions, and has successfully prosecuted numerous securities fraud class actions on behalf of investors." Further, in *In re Bank of America Corp. Securities, Derivative and ERISA Litigation*, No. 09-MD-2058 (S.D.N.Y.), Saxena White was appointed as Co-Lead Counsel, by former Southern District of New York Judge Chin, who expressly noted that Saxena White is "experienced and qualified to serve as lead counsel." Accordingly, Saxena White has built an impressive track record of professional and efficient shareholder representation in complex securities actions. In sum, Saxena White has the skill and knowledge that will enable it to prosecute this action effectively and expeditiously.

The Institutional Investors have also selected the Trinko Firm to serve as Liaison Counsel. The Trinko Firm has extensive experience prosecuting complex litigation, including securities fraud class actions, and will serve to effectively facilitate the litigation on a local level. *See* Trinko Firm Resume attached as Exhibit F to the White Decl. Moreover, Saxena White and the Trinko Firm have extensive experience cooperatively litigating complex securities fraud class actions and derivative actions in this Court.[9] Accordingly, the Court should approve the Institutional Investors' selection of Saxena White as Lead Counsel and the Trinko Firm as Liaison Counsel for the Class.

## C.    The Related Actions Should Be Consolidated

There are at least two related securities fraud class actions filed in this District against Defendants:

| Case Caption | Civil No. | Date Filed |
| --- | --- | --- |
| *Ortuzar v. Francesca's Holdings Corp.* | 13-06882-RJS | September 27, 2013 |
| *WPB Police Pension Fund and Taunton Contributory Retirement System v. Francesca's Holdings Corp.* | 13-07804-RJS | November 4, 2013 |

These actions present virtually identical factual and legal issues, as they all arise out of the same alleged public misstatements and omissions regarding Francesca's financial condition and future prospects. Accordingly, consolidation is appropriate under Rule 42(a) of the Federal Rules of Civil Procedure. *See, e.g.*, *Glauser v. EVCI Colls. Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006) ("[T]his Court has recognized that consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports.") (internal quotations and citations omitted); *Kaplan*, 240 F.R.D. at 92 (ordering

---

[9] *See*, *e.g.*, *In re Sadia S.A. Securities Litigation*, No. 08-cv-9528-SAS (S.D.N.Y.); *In re Bank of America Corp. Securities, Derivative and ERISA Litigation*, No. 09-MD-2058 (S.D.N.Y.).

13

consolidation where actions contained overlapping factual allegations that "defendants' statements to the investing public misrepresented or omitted to state material facts about the financial status of [the defendants]"); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced.") (citations omitted).

## CONCLUSION

For the reasons discussed above, the Institutional Investors respectfully request that the Court: (1) appoint them to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), and Section 27(a)(3)(B) of the Securities Act, 15 U.S.C. § 77z-1(a)(3)(B); (2) approve their selection of Saxena White as Lead Counsel and the Trinko Firm as Liaison Counsel for the Class; (3) consolidate all related actions pursuant to Fed. R. Civ. P. 42(a); and (4) grant such other relief as the Court may deem just and proper.

Dated:  November 26, 2013                    Respectfully Submitted,

**LAW OFFICES OF CURTIS V. TRINKO, LLP**

*/s/ Curtis V. Trinko*
Curtis V. Trinko (CT-1838)
Jennifer E. Traystman
C. William Margrabe
16 West 46th Street, 7th Floor
New York, NY 10036
Telephone: (212) 490-9550
Facsimile: (212) 986-0158
Email: Ctrinko@trinko.com

*Proposed Liaison Counsel for the Class*

**SAXENA WHITE P.A.**
Joseph E. White III
Lester R. Hooker

14

2424 North Federal Highway
Boca Raton, FL 33431
Phone: (561) 394-3399
Fax: (561) 394-3382
Email:  jwhite@saxenawhite.com
Email: lhooker@saxenawhite.com

*Proposed Lead Counsel for the Class*

15